UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

JUSTIN B. KRUSE,

    Plaintiff,

v.                                                Case No.:   5:22-cv-291-DNF

SOCIAL SECURITY
COMMISSIONER,

    Defendant.

_____

**OPINION AND ORDER**

Plaintiff Justin B. Kruse seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for a period of disability and disability insurance benefits. The Commissioner filed the Transcript of the proceedings ("Tr." followed by the appropriate page number), and the parties filed legal memoranda setting forth their positions. As explained below, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**I.  Social Security Act Eligibility, Standard of Review, Procedural History, and the Commissioner's Decision**

    **A.  Social Security Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can

be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The impairment must be severe, making the claimant unable to do his previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505–404.1511, 416.905–416.911.

### B.  Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Unlike findings of fact, the Commissioner's conclusions of law are not presumed valid and are reviewed under a de novo

standard. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *Maldonado v. Comm'r of Soc. Sec.*, No. 20-14331, 2021 WL 2838362, at *2 (11th Cir. July 8, 2021); *Martin*, 894 F.2d at 1529. "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066.

The Commissioner must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful employment. 20 C.F.R. § 404.1520(a)(4)(i), (b); 20 C.F.R. § 416.920(a)(4)(i), (b). At step two, the Commissioner must determine whether the impairment or combination of impairments from which the claimant allegedly suffers is "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c); 20 C.F.R. § 416.920(a)(4)(ii), (c). At step three, the Commissioner must decide whether the claimant's severe impairments meet or medically equal a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii), (d); 20 C.F.R. § 416.920(a)(4)(iii), (d). If the Commissioner finds the claimant's severe impairments do not meet or medically equal a listed impairment, then the Commissioner must determine whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv), (e)–(f); 20 C.F.R. § 416.920(a)(4)(iv), (e)–(f).

If the claimant cannot perform his past relevant work, the Commissioner must determine at step five whether the claimant's RFC permits him to perform other work that exists in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), (g), 416.920(a)(4)(v), (g). At the fifth step, there are two ways in which the ALJ may establish whether the claimant is capable of performing other work available in the national economy. The first is by applying the Medical Vocational Guidelines, and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239-40 (11th Cir. 2004); *Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015).

The claimant bears the burden of proof through step four. *Atha*, 616 F. App'x at 933. If the claimant meets this burden, then the burden temporarily shifts to the Commissioner to establish the fifth step. *Id.*; 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g). If the Commissioner presents evidence of other work that exists in significant numbers in the national economy that the claimant is able to perform, only then does the burden shift back to the claimant to prove he is unable to perform these jobs. *Atha*, 616 F. App'x at 993.

C. **Procedural History**

Plaintiff applied for a period of disability and disability insurance benefits on November 21, 2017, alleging disability beginning November 1, 2014. (Tr. 104, 204-205). The application was denied initially. (Tr. 104). Plaintiff requested a hearing

and on July 24, 2019, a hearing was held before Administrative Law Judge Bryan Henry ("ALJ"). (Tr. 36-103). On August 9, 2019, the ALJ entered a decision finding Plaintiff had not been disabled from November 1, 2014, through March 31, 2018, the date last insured. (Tr. 24). On March 30, 2020, the Appeals Council denied Plaintiff's request for review. (Tr 1-5).

Plaintiff appealed the decision to the United States District Court and on January 14, 2021, the Court granted an Unopposed Motion for Remand Pursuant to Sentence Four of 42 U.S.C. § 405(g). (Tr. 860-63). On April 27, 2021, the Appeals Council remanded the case to the ALJ, with directions to reevaluate the opinions of Mark Suyeishi, Psy.D. and Joseph Carver, Ph.D., reconsider Plaintiff's maximum RFC, and if warranted, obtain evidence from a vocational expert. (Tr. 866-68).

The ALJ held another hearing on November 15, 2021. (Tr. 789-828). On November 29, 2021, the ALJ entered a decision finding Plaintiff was not under a disability from November 1, 2014, the alleged onset date, through March 31, 2018, the date last insured. (Tr. 767-81). On April 27, 2022, the Appeals Council denied Plaintiff's exceptions. (Tr. 752-54).

Plaintiff initiated the instant action by Complaint (Doc. 1) filed on June 27, 2022, and the case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (Doc. 10).

## D. Summary of ALJ's Decision

In this matter, the ALJ found Plaintiff met the insured status requirements of the Social Security Act through March 31, 2018. (Tr. 769). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity from his alleged onset date of November 1, 2014, through his date last insured of March 31, 2018. (Tr. 769). At step two, the ALJ found that Plaintiff had the following severe impairments through his date last insured: "degenerative disc disease (DDD) of the cervical spine, degenerative joint disease (DJD) of the bilateral shoulders, left ankle gout versus inflammatory arthritis, bilateral hip DJD, osteoarthritis of the left knee, anxiety disorder with panic disorder, and persistent depressive disorder." (Tr. 770). At step three and through the date last insured, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). (Tr. 770).

Before proceeding to step four, the ALJ found that Plaintiff had the following RFC:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 [C.F.R. §] 404.1567(b) except the claimant can lift and carry occasionally 20 pounds, frequently 10 pounds. He can sit for approximately six hours in an eight-

>hour day, and he can stand and walk for approximately four hours in an eight-hour day. He can only occasionally climb ramps and stairs, never climb ladders, ropes, or scaffolds, occasionally balance as part of his job requirements, and occasionally stoop, crouch, kneel, and crawl. The claimant can only occasionally reach overhead bilaterally. He can have only occasional exposure to extreme cold, occasional exposure to excessive vibration, and never work around unprotected heights or moving and/or dangerous machinery. The claimant is limited to work that consists of only simple, routine, repetitive tasks. He can have no customer service interaction with the public, but occasional interaction with coworkers and supervisors. He can perform work that does not involve participation in tandem or group tasks. He is able to maintain concentration, persistence, and pace for extended periods of two-hour segments during a normal workday with normal breaks in work that consists of no more than simple, routine, repetitive tasks. The claimant can perform low stress work, defined as occasional decision making and occasional changes in the work setting.

(Tr. 772).

At step four, the ALJ determined that through the date last insured, Plaintiff was not capable of performing his past relevant work as a retail clerk, small business owner, and shipping and receiving clerk. (Tr. 779). At step five, the ALJ found that through the date last insured and considering Plaintiff's age (35 on the date last insured), education (at least high school), work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 779-80). Specifically, the vocational expert testified that a person with Plaintiff's limitations could perform such occupations as:

(1) bench assembler, DOT 706.684-022,[1] light, SVP 2

(2) sub assembler, DOT 729.684-054, light, SVP 2

(3) solderer assembler, DOT 813.684-022, light, SVP 2

(4) document preparer, DOT 249.587-018, sedentary, SVP 2

(5) addresser, DOT 209.587-018, sedentary, SVP 2

(6) polisher for eyeglass frames, DOT 713.684-038, sedentary, SVP 2

(7) surveillance system monitor, DOT 379.367-010, sedentary, SVP 2

(Tr. 780-81). The ALJ concluded that Plaintiff was not under a disability from November 1, 2014, the alleged onset date, through March 31, 2018, the date last insured. (Tr. 781).

## II.   Analysis

On appeal, Plaintiff raised two issues, but later withdrew the first issue. (*See* Doc. 21). The remaining issue is whether the ALJ's finding that Plaintiff has the RFC to perform work within the national economy is supported by substantial evidence of record. (Doc. 15, p. 1). In sum, Plaintiff argues that the ALJ did not properly consider the opinions of four mental health providers when formulating Plaintiff's RFC.

---

[1] DOT refers to the *Dictionary of Occupational Titles*.

The same legal standard applies to the evaluation of all these opinions. The regulations for disability cases filed after March 27, 2017 – such as this one – changed and an ALJ no longer defers or gives any specific evidentiary weight to a medical opinion. 20 C.F.R. § 404.1520c(a), 20 C.F.R. § 416.920c(a). Thus, an ALJ no longer uses the term "treating source" and does not defer or give specific evidentiary weight, including controlling weight, to any medical opinion or prior administrative medical finding. *Torres v. Comm'r of Soc. Sec.*, No. 6:19-cv-1662-ORL-PDB, 2020 WL 5810273, at *2 (M.D. Fla. Sept. 30, 2020) (citing 20 C.F.R. § 404.1520c(a)).

Instead, an ALJ assesses the persuasiveness of a medical source's opinions given the following five factors, with the first two being the most important: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length, frequency, and purpose of the examining and any treatment relationship; (4) specialization; and (5) other factors, such as the source's familiarity with other evidence concerning the claim, that tend to support or contradict the medical opinion. 20 C.F.R. § 404.1520c(a)-(c); 20 C.F.R. § 416.920c(a)-(c). An ALJ may but is not required to explain how he considers factors other than supportability and consistency, unless two or more opinions are equally persuasive on the same issue. 20 C.F.R. § 404.1520c(b)(2); 20 C.F.R. § 416.920c(b)(2).

For supportability, the revised rules provide: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1); 20 C.F.R. § 416.920c(c)(1). For consistency, the revised rules provide: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2); 20 C.F.R. § 416.920c(c)(2).

The new regulations also differentiate between medical opinions and "other medical evidence." 20 C.F.R. §§ 404.1513(a)(2)-(3), 416.913(a)(2)-(3). "A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in the abilities listed in paragraphs (a)(2)(i) through (iv). 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2). "Other medical evidence is evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. §§ 404.1513(a)(3), 416.913(a)(3).

### A.     Daniel Johnson, Psy.D., Licensed Psychologist

Plaintiff contends that the ALJ should have found Dr. Johnson's opinion persuasive rather than partially persuasive. (Doc. 15, p. 6). Plaintiff asserts that the ALJ should have adopted Dr. Johnson's findings that 20% of the time, Plaintiff would be unable to maintain concentration, accept instruction from supervisors, or interact appropriately with the general public, and thus would be precluded from employment. (Doc. 15, p. 6). This argument lacks merit.

Dr. Johnson treated Plaintiff from May 2016 through September 2017. (Tr. 314-58, 731). On July 12, 2018, nearly a year later, Dr. Johnson completed a Mental Residual Functional Capacity Statement, finding – among other things – that for 20% of an 8-hour workday, Plaintiff would be unable to: maintain attention and concentration for extended periods of time; accept instructions and respond appropriately to criticism from supervisors; and interact appropriately with the general public. (Tr. 731-33).

In the decision, the ALJ summarized Dr. Johnson's opinion and found it partially persuasive:

> [Dr. Johnson] noted the claimant carried the diagnosis of persistent depressive disorder and was precluded from many tasks in excess of greater than twenty percent of the workday. This provider did not feel the claimant's ability to understand, and remember impacted his ability to perform work tasks. This provider opined the claimant would be off-task thirty percent of the workday and would be absent or unable to complete an eight-hour workday more than four days per month. (16F/2-3)

> The undersigned has considered Dr. Johnson's assessment and finds it partially persuasive. Dr. Johnson was for a time, a treating source but at the time he completed this form, he had not treated the claimant for nearly one year. The assessment does not support the limitations with objective findings or signs. Overall, the undersign[ed] finds Dr. Johnson's opinion is an overstatement of the claimant's limitations and not fully supported by the record. Based, thereon, the undersigned finds this assessment only partially persuasive.

(Tr. 775).

Plaintiff argues that Dr. Johnson's diagnosis of persistent depressive disorder, and a prognosis of "'slow future progress and return to less-than-optimal functioning'" supports his opinion. (Doc. 15, p. 5-6). While Dr. Johnson included these statements in his assessment, they are insufficient to show Dr. Johnson's opinion was supported by and consistent with the evidence. In the decision, the ALJ recognized that Dr. Johnson was a treating source for a time, but when he completed the Mental Residual Functional Capacity Statement, he had not treated Plaintiff for nearly one year. (Tr. 775). The ALJ also found that Dr. Johnson's assessment did not support the limitations with objective findings or signs, and Dr. Johnson cited none of his progress notes to support the limitations he found. Plaintiff also cites none of Dr. Johnson's treatment notes to support the amount of time Dr. Johnson claimed Plaintiff would be unable to maintain attention and concentration, interact appropriately with the general public, or accept instructions and respond appropriately to criticism from supervisors. Plus, the RFC accommodated many of Dr. Johnson's limitations, such as limitations to: simple, routine, repetitive tasks; no

customer service interaction with the public; occasional interaction with coworkers and supervisors; maintaining concentration, persistence, and pace for extended period of two-hour segments during a normal workday; and performing low stress work, defined as occasional decision making and occasional changes in the work setting. (Tr. 772). Substantial evidence supports the ALJ's decision to afford partial weight to Dr. Johnson's opinion.

### B. Mark Suyeishi, Psy.D.

Non-examining, reviewing psychologist Dr. Suyeishi provided prior administrative medical findings. (Tr. 115-116). He determined Plaintiff had markedly limited ability to interact appropriately with the general public, moderately limited ability to accept instruction and respond appropriate to criticism from supervisors, and moderately limited ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (Tr. 115).

In the decision, the ALJ found Plaintiff had moderate limitations with regard to concentration, persistence, and pace, moderate limitations for adapting or managing oneself, and marked limitations in interacting with others, basically adopting Dr. Suyeishi's findings. (Tr. 770-71). The ALJ found,

> In sum, because Dr. Suyeishi's prior administrative finding that the claimant has a "marked" limitation in interacting with others is supported by and consistent with the claimant's longitudinal medical record, this portion of his prior administrative finding is persuasive. However, a marked limitation in interacting with others does more appropriately

> correlate to more significant functional limitations, as articulated in the residual functional capacity. In addition, as explained, the claimant is further limited in the other areas of the "paragraph B" criteria as well as well as his mental functioning in the residual functional capacity, which is inconsistent with Dr. Suyeishi's prior administrative finding. Dr. Suyeishi's prior administrative finding is therefore partially persuasive.

(Tr. 777).

Plaintiff argues that Dr. Suyeishi found he had a marked inability in social functioning as it relates to both co-workers and supervisors. (Doc. 15, p. 6). Plaintiff claims substantial evidence supports this opinion and the ALJ should have found this opinion persuasive. (Doc. 15, p. 6). This argument fails. The language in the Mental Residual Functional Capacity Assessment specifically states that "the actual mental residual functional capacity assessment is recorded in the narrative discussion(s), which describes how the evidence supports each conclusion." (Tr. 115); *see Rae v. Saul*, No. 8:19-cv-2987-T-TGW, 2021 WL 211269, at *3 (M.D. Fla. Jan. 21, 2021) (citing *Land v. Comm'r of Soc. Sec.*, 494 F. App'x 47, 49 (11th Cir. 2012)) (the plaintiff . . . fails to recognize the entirety of the reviewers' opinions contained in the MRFC. Thus, the reviewers' limitations ratings are followed by "the actual mental residual functional capacity assessment, [which] is recorded in the narrative discussion(s)."). Thus, the Court must review the entire assessment, which includes the narrative section.

In the narrative section, Dr. Suyeishi explained that Plaintiff reported having a hard time with crowds and strangers often getting into confrontations with them, and reported he worked best alone. (Tr. 116). He added that Plaintiff was: "capable of work of limited complexity but which requires accuracy and attention to detail; cannot work closely with supervisors or coworkers; can accept supervision and relate to coworkers if contact is not frequent or prolonged." (Tr. 116). And as explained by the ALJ in the decision, he included limitations in the RFC that correspond to Dr. Suyeishi's narrative explanation or are even more restrictive, such as only occasional interaction with supervisors or coworkers. (Tr. 116, 772). Substantial evidence supports the ALJ's consideration of Dr. Suyeishi's opinion.

### C. Zachary Keller, D.O., Psychiatrist

Plaintiff argues that the ALJ's finding that Dr. Keller's opinion was partially persuasive was not supported by substantial evidence. (Doc. 15, p. 7). Plaintiff also argues that some of the ALJ's reasoning to discount Dr. Keller's opinion conflicts with the Regulations. (Doc. 15, p. 8). Plaintiff's arguments are unavailing.

Dr. Keller performed a consultative mental examination of Plaintiff and completed a Mental Status Evaluation on February 24, 2018. (Tr. 521-526). Dr. Keller also reviewed some of Dr. Johnson's progress notes. (Tr. 522). He found Plaintiff markedly impaired: in the ability to interact appropriately with the public; in the ability to appropriately interact with supervisors; in the ability to interact

appropriately with co-workers; and in the ability to respond appropriately to usual work situations and to changes in a routine work setting. (Tr. 526). To support his opinion, Dr. Keller explained that Plaintiff had been in several fights with people in public and this would make it difficult for him to take any sort of direction from a supervisor or interact appropriately with the public in any service type of job. (Tr. 526). He also explained that Plaintiff's anger coupled with his extreme anxiety and panic attacks would make it difficult for him to interact appropriately with others and, until he received further treatment, Dr. Keller did "not believe that [Plaintiff] will be able to contribute a normal 8-hour workday as would be required of him." (Tr. 526).

The ALJ found Dr. Keller's assessment partially persuasive for a couple of reasons. (Tr. 775). First, the ALJ noted that Dr. Keller was an examining source and not a treating source. (Tr. 775). And even though Dr. Keller reviewed some of Plaintiff's treatment records, the ALJ recognized that his impressions were based on a one-time encounter, which would likely be influenced by Plaintiff's mood and physical symptoms on that day. (Tr. 775). Plaintiff argues that the ALJ erred in relying on Dr. Keller being a one-time examiner, claiming that this type of analysis conflicts with the Regulations. (Doc 15, p. 8). While supportability and consistency are the two most important factors, an ALJ may also consider the length, frequency, and purpose of the examining relationship. 20 C.F.R. § 404.1520c(a)-(c). Thus, the

ALJ did not err in considering Dr. Keller's limited examining relationship with Plaintiff.

Second, while the ALJ agreed with Dr. Keller that Plaintiff was impaired in his ability to interact with others – as shown by the corresponding limitations in the RFC – the ALJ did not agree and found the record did not support a finding that Plaintiff was markedly impaired in his ability to respond appropriately to usual work settings. (Tr. 754-75). When summarizing Dr. Keller's evaluation, the ALJ noted that even though Plaintiff's mood was anxious, evasive, and at times irritable, he also had clear thought patterns, was very coherent, was relevant to questioning, and was pleasant, cooperative, appropriate, and had sufficient attention and concentration. (Tr. 774). The ALJ further found that Dr. Keller did not explain or cite any findings from his exam or observations as to why he found Plaintiff was markedly limited in ability to respond appropriately to usual work situations and to changes in a routine work setting. (Tr. 775). For these reasons, substantial evidence supports the ALJ's supportability and consistency findings and supports his finding that Dr. Keller's opinion was partially persuasive.

E. **Joseph Carver, Ph.D., Clinical Psychologist**

Plaintiff contends that the ALJ improperly found Dr. Carver's opinion unpersuasive. (Doc. 15, p. 10). Dr. Carver testified as a medical expert at the July 2019 hearing, acknowledging that he had not examined or treated Plaintiff. (Tr. 75).

Dr. Carver found Plaintiff had no limitations in the ability to understand, remember, and apply information; mild limitations in concentration, persistence, and pace; and no limitation in adapting and managing himself. (Tr. 82-83, 86-87). Dr. Carver noted that there was a long history in the record of Plaintiff's aggressive and violent outbursts or temper tantrums but found Plaintiff had only a moderate impairment in interacting with others. (Tr. 83). He supported his opinion by noting that Plaintiff was able to maintain himself enough to go to college and interact at the VA. (Tr. 83). He also stated that a low-stress job would decrease the likelihood of anger outbursts. (Tr. 86).

As for functional limitations, Dr. Carver determined that for social interactions, Plaintiff could work with only occasional contact with the public because he had very little patience and was easily irritated. (Tr. 88-89). As to contact or interaction with co-workers and supervisors, Dr. Carver limited Plaintiff to occasional contact with no ability to work in tandem or in a group. (Tr. 89). Dr. Carver found that Plaintiff would have no problems with a change in work activities, work settings, or decision-making as long as the social accommodations were considered. (Tr. 89).

The ALJ found Dr. Carver's opinion unpersuasive. (Tr. 778). The ALJ noted that Dr. Carver never treated or examined Plaintiff. (Tr. 778). He further found: "[h]owever, the evidence of the claimant's difficulty with recall, his anxiety seen

during his consultative exam, and his difficulty managing stress, is inconsistent with Dr. Carver's opinion and shows the claimant is further limited under the 'paragraph B' criteria and functionally as articulated in the residual functional capacity (7F; 5E)." (Tr. 778). Thus, the ALJ found Dr. Carver's opinion unsupported by and inconsistent with the record because the ALJ determined Plaintiff had more limitations than found by Dr. Carver. (Tr. 778). And the limitations contained in the RFC either mirror or exceed most of Dr. Carver's findings as to limitations. (Tr. 772). Again, the ALJ limited Plaintiff to no customer service interaction with the public, occasional interaction with coworkers and supervisors, and no participation in tandem or group tasks. (Tr. 772). The ALJ also limited Plaintiff to low-stress work, defined as occasional decision making and occasional changes in the work setting. (Tr. 772). Substantial evidence supports the ALJ consideration of Dr. Carver's opinion.

### III. Conclusion

For the reasons discussed above, the Court finds that the decision of the Commissioner is supported by substantial evidence and the Commissioner applied the correct legal standard. The decision of the Commissioner is **AFFIRMED**. The Clerk of Court is directed to enter judgment consistent with this opinion, terminate all deadlines, and close the case.

**DONE** and **ORDERED** in Fort Myers, Florida on August 24, 2023.

_____
DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties